**RUDOLPH et al. v. SMITH.**

No. 2289.

Court of Civil Appeals of Texas. Waco.

Feb. 6, 1941.

Rehearing Denied Feb. 27, 1941.

Mark Smith, of Waxahachie, for appellants.

L. D. Johnston and H. R. Stovall, both of Waxahachie, for appellee.

HALE, Justice.

Appellant, W. K. Rudolph as administrator of the estate of J. W. Hopkins, deceased, and appellee, J. A. Smith, signed a written instrument dated February 17, 1937, designated "sales contract," by the terms of which the administrator agreed to sell to appellee 52½ acres of land belonging to said estate, to give immediate possession of the property, to secure an order from the Probate Court authorizing such sale and to make title to said property good by bringing suit to clear title or remove cloud therefrom. Appellee agreed, by the terms of such instrument, to pay the administrator the sum of $550 cash for said property, the sum of $150 to be paid as "earnest money" and the remainder to be paid upon receiving deed and an abstract showing a good and merchantable title to the land. Upon the execution of said instrument, appellee paid the sum of $150 to the administrator and went into possession of the property and continued in possession of the same until the trial of the case in October 1939.

Appellee, who will hereinafter be referred to as plaintiff, instituted this suit against W. K. Rudolph, individually and in his capacity as administrator, and against S. M. Rudolph, alleging that the administrator executed and delivered to him the sales contract hereinbefore referred to; that he had full faith in the administrator perfecting title to said land and furnishing an abstract as he had contracted to do, and that he paid to the administrator the sum of $150, which had never been returned to him, to his damage in the sum of $150; that he went into possession of the property and began at once to make certain necessary improvements thereon in the establishment of a home for himself and family at an expense to him of about $750; that said improvements were necessary in order to make the property suitable for a home and that they were made in good faith with the knowledge, consent and approval of W. K. Rudolph, and that by reason of such permanent and valuable improvements, the value of said property had been increased by a sum in excess of $1,000; that a certain deed from the administrator to plaintiff purporting to convey title to the 52½ acres was not delivered to plaintiff, but was placed of record on October 20, 1937, without his knowledge or consent and in fraud of his rights; that a certain deed which plaintiff made to S. M. Rudolph on or about December 20, 1937, purporting to convey the property in question was a nullity because S. M. Rudolph was a brother of the administrator and "they schemed together to defraud the plaintiff out of the $150.00 earnest money and the cost of all improvements herein alleged"; that plaintiff, on various and sundry occasions, at times when he was able, willing and ready to pay the full price of said property, had requested W. K. Rudolph to perform the contract and to complete the abstract of title "in order that he might procure a deed to said property" and that W. K. Rudolph breached said contract on or about September 15, 1938 by "then and there notifying plaintiff that he would not comply with said sales contract." Such is the substance in full of the allegations in the petition. Plaintiff prayed for judgment jointly and severally against S. M. Rudolph and W. K. Rudolph, individually and as administrator, for $1,150 and for a "judgment lien" against the land described in his petition and for costs of suit and for general and special relief.

W. K. Rudolph filed separate answers for himself individually and as administrator, setting up general demurrers, fourteen special exceptions, general denial and a plea of compliance with the terms of the contract sued upon. S. M. Rudolph filed answer consisting of a plea in abatement on the ground of improper joinder, general demurrer and general denial. The trial court overruled the plea of misjoinder and each of the general demurrers and special exceptions of the several defendants and to which they excepted.

The jury found on special issues that: On or about February 17, 1937, W. K.

Rudolph agreed with plaintiff that plaintiff could make such improvements on said land as he cared to make; in the fall of 1937 plaintiff informed W. K. Rudolph that he, plaintiff, did not have the money with which to pay for the remainder of the amount of purchase price he had agreed to pay for said land; the purported deed in evidence from W. K. Rudolph as administrator to plaintiff was never delivered to plaintiff; the deed from plaintiff and wife to S. M. Rudolph was made for the purpose of obtaining a loan on said land to enable plaintiff to pay the balance of the purchase price he had agreed to pay for same; it was agreed between S. M. Rudolph and plaintiff when they each signed the purported lease contract in evidence bearing date of December 20, 1937, that said instrument should represent their respective rights in said land without reference to the purported sales contract signed by W. K. Rudolph, administrator, and plaintiff on February 17, 1937; on or about September 28, 1938, plaintiff, in good faith, at a reasonable time and place, requested W. K. Rudolph to furnish him an abstract of title to the 52½ acre tract of land, at which time plaintiff was ready, able and willing to pay the balance of the purchase price for said land, and plaintiff so informed W. K. Rudolph, who then refused to furnish to plaintiff such abstract; plaintiff, after he had gone into possession of the land and prior to September 28, 1938, made valuable and permanent improvements on said land, in good faith, of the reasonable value of $1,000; and the reasonable and fair rental value of said land from the time plaintiff went into possession of the same on February 17, 1937 up to the time of the trial in October 1939 was nothing.

The court rendered judgment in favor of plaintiff and against S. M. Rudolph and W. K. Rudolph, individually and as administrator of the estate of J. W. Hopkins, deceased, for the sum of $750, decreeing that said sum shall be and constitute a charge and lien against the land therein described, providing that the defendants, or either of them, shall have ninety days from the date thereof within which to pay plaintiff $750, and that upon the payment of said sum they should be entitled to a writ of possession; but that if such sum be not paid to plaintiff within ninety days from the date thereof, then plaintiff should be entitled to have his foreclosure as against all of the defendants and to have said land sold in payment of said sum of $750.

The various grounds in the amended motion of the defendants for new trial are presented by appellants as their assignments of error here. One of the assignments thus presented is "because the court erred in overruling defendants' general and special exceptions to plaintiff's petition." Another assignment is "because the court erred in overruling defendant S. M. Rudolph's plea in abatement and also in overruling his general exception to plaintiff's petition as against him." Still other assignments are, "because the verdict of the jury is contrary to the evidence" and "because the judgment of the court is contrary to the law" and "because the court erred in overruling defendants' exceptions to the court's charge." Appellee objects to a consideration by this court of any of the assignments presented because each is duplicitous and multifarious and because such assignments do not constitute distinct specifications of error. Notwithstanding the liberal construction which this court has always given to the rules of practice and procedure, we do not believe we are authorized to consider a number of the assignments urged.

■ However, it is our duty to note any fundamental error apparent on the face of the record, whether such error be assigned or not. And it is well settled under the existing law of this state that the overruling of a general demurrer to a petition, if error, is fundamental and need not be assigned as such. Sneed v. Moodie, 24 Tex. 159; City of San Antonio v. Talerico, 98 Tex. 151, 81 S.W. 518; Davis v. Parks, Tex.Civ.App., 157 S.W. 449; Grayson County v. Harrell, Tex.Civ.App., 202 S.W. 160, writ refused; Stillman v. Hirsch, 128 Tex. 359, 99 S.W.2d 270.

■ The foundation of the cause of action which the plaintiff attempted to set forth in his petition was a written contract which was plead in haec verba and which recited on its face that it embraced the obligation of "W. K. Rudolph, administrator of the estate of J. W. Hopkins, deceased," and which was signed "W. K. Rudolph, administrator." There was no allegation of any fact or facts in the petition, even though every reasonable intendment be indulged in favor of the same, which could serve as the basis for a legal inference that either S. M. Rudolph or W. K. Rudolph, individually, assumed any

obligation under such contract, or that either of them was legally liable to plaintiff for any of the damages alleged for the breach of the contract sued upon or otherwise. Woodward v. Acme Lumber Co., Tex.Civ.App., 103 S.W.2d 1054.

A careful reading of the pertinent statutes relating to the sale and disposition of property belonging to the estate of a decedent will immediately suggest many reasons why the petition of plaintiff failed to state a cause of action against the administrator in this case. In this connection we call attention only to Article 3553, Vernon's Annotated Civil Statutes, which provides specifically that no sale of property of an estate shall be made by an administrator without an order of the Probate Court authorizing the same. A proper order of the Probate Court is therefore essential to the validity of the sale of property by an administrator. Webb v. Reynolds, Tex. Com.App., 207 S.W. 914; Moore v. Wooten, Tex.Com.App., 280 S.W. 742. If the contract sued upon was not a valid one, the plaintiff would have no cause of action either for specific performance or for damages on account of a breach thereof. Saulsbury v. Anderson, Tex.Civ.App., 39 S.W.2d 142; Bradley v. Howell, Tex.Civ. App., 126 S.W.2d 547. Not only was there no allegation in the petition of the plaintiff to the effect that W. K. Rudolph, as administrator, was authorized to execute the sales contract sued upon, but we think the contrary affirmatively appears, as otherwise there would be no reason for the administrator to agree in the contract to secure an order from the Probate Court authorizing such sale. Without further comment, we hold that the trial court erred in overruling the general demurrer interposed on behalf of each of the defendants to the plaintiff's petition.

■ Article 2211 of Vernon's Annotated Civil Statutes provides that the judgments of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any. Moreover, it is well established under the Texas law as it now exists, that a judgment which is not supported by pleadings is fundamentally erroneous. Howe v. Keystone Pipe & Supply Co., 115 Tex. 158, 274 S.W. 563; Queen Ins. Co. v. Galveston, H. & S. A. R. Co., Tex.Com.App., 296 S.W. 484; Bray v. Bray, Tex.Civ.App., 1 S.W.2d 525; City of Fort Worth v. Gause, 129 Tex. 25, 101 S.W.2d 221.

■ The judgment appealed from is quite lengthy, including, as it does, the findings of the jury on special issues and various findings by the trial court. Among other things, the judgment recites on its face that "at the close of all the evidence in the case and after both sides had rested, the court sent the jury into the jury room and asked counsel for the respective parties what they were each asserting or claiming in the suit," and after counsel had stated their respective claims, the judge of the court then stated that he would permit the defendants to make such further proof before the jury as they cared to make. The judgment further recites that after the verdict had been received, the court, "having suggested to counsel for plaintiff that notwithstanding the verdict of the jury, and the fact that counsel for defendants refused to offer any evidence as to the reasonable and fair rental value of said property and failed to plead for any such recovery, he thought defendants were, in equity, entitled to some allowance therefor, and the plaintiff offering to do equity in all things and make such remittitur as the court deemed proper; * * * and the plaintiff agreeing to remit to and allow defendants credit and the benefit of said sum of $250.00; and it further appearing to the court that the other equities in the case are about equal," rendered judgment as hereinbefore shown. Neither the judgment nor the transcript showed any motion for judgment non obstante veredicto. The action of the court in thus disregarding the findings of the jury and in substituting his own findings was clearly error. Hines v. Parks 128 Tex. 289, 96 S.W.2d 970.

■■ There was evidence admitted on the trial tending to show that immediately after the sales contract was signed on February 17, 1937, the administrator procured an order of the Probate Court authorizing such sale; that suit was thereafter instituted and prosecuted to judgment in the District Court of Ellis County for the purpose of removing cloud from the title to the land in question at an expense to the administrator of $159.45; that plaintiff then informed the administrator that he did not have the money with which to pay the purchase price agreed upon and a deed was then executed by the administrator conveying the property to plaintiff and plaintiff in turn conveyed the property to S. M. Rudolph under some kind of a

written contract dated December 20, 1937, in order that a loan might be secured by S. M. Rudolph against said land and the proceeds thereof used to pay the purchase price originally agreed upon by plaintiff and the administrator; that S. M. Rudolph was unable to consummate the contemplated loan and on or about September 28, 1938, plaintiff requested W. K. Rudolph to furnish him an abstract; that W. K. Rudolph caused a complete abstract to be compiled, which was tendered to plaintiff on October 10, 1938.

The evidence thus introduced explains in a measure the findings of the jury, many of which would be unintelligible and meaningless by looking alone to the pleadings, and indicates that the parties, under proper pleadings, do have rights to be adjudicated, depending upon what the ultimate facts may be. But evidence without pleadings to support a judgment is as fatally defective under presently existing law as pleadings without evidence, and in the absence of any pleadings in this case with respect to the orders, decrees, deeds and contract between plaintiff and S. M. Rudolph, referred to in the testimony and verdict, no valid judgment can properly be based on such evidence or findings.

From what has been said, we think it conclusively appears on the face of the pleadings and judgment appealed from that the latter was improperly based upon findings of the court and jury and on evidence, if any, which did not have any support whatsoever in the pleadings.

Although the deeds, orders, decrees and contract between plaintiff and S. M. Rudolph, hereinbefore referred to, seem to have been admitted in evidence, none of them are contained in the statement of facts. It also appears that the abstract of title to the property in question was produced in court, but there is no satisfactory showing, either in the pleadings or evidence, as to whether such abstract disclosed a good and merchantable title, or if so, as to whether such title vested in the estate of J. W. Hopkins or in plaintiff or in S. M. Rudolph. The record before us is therefore not sufficiently complete, either from the standpoint of the pleadings or the evidence, to warrant us in making any suggestions with respect to what further proceedings may properly be had in the trial court.

Because we are of the opinion that there was fundamental error (1) in overruling the general demurrers of each of the defendants below, and (2) in rendering a judgment which was without support in the pleadings and which did not conform to the verdict, the judgment of the trial court is reversed and the cause is remanded for such further proceedings, not inconsistent with this opinion, as may be deemed proper.